Our first case for argument is Brown v. UAL Corporation. Mr. O'Connor. Good morning. May it please the Court, Counsel Dean O'Connor appearing for Jeffrey Brown. And for the record, Mr. Brown is present today. I was driving downtown here today. I haven't done that in a long time. And it struck me that it was kind of unusual, if not kind of almost freaky, that instead of there being snow and ice on the ground, because I grew up in Lombard and got my undergrad and law degree here in the state of Illinois, that it was warm out. And so I guess it's fitting that we have this case that's kind of unusual, or freaky in a sense, in that what occurred to the underlying litigation that we were trying to get before the bankruptcy court to be heard. What happened in this case is that Mr. Brown had been basically terminated by United Airlines prior to the bankruptcy being filed. During the pendency of the bankruptcy, there were hearings, arbitrations, whatever. He was basically said he could be reinstated. And then things occurred that he felt were not proper. Things that resulted in him filing a lawsuit in California, alleging a number of things, including wrongful termination, which United Airlines immediately removed from the state court to the bankruptcy court in Los Angeles. I'm unclear why it went to Los Angeles, but it went to Los Angeles. And it was out there for a couple of years, and then United Airlines confirmed their plan. At about the same time, though, they requested that case, this adversary proceeding, be transferred to Chicago. And I am a bankruptcy practitioner primarily in Arizona, and I practiced here in bankruptcy, and I couldn't find the case. Meaning I could see the adversary in Los Angeles, but I could not find where it went after that. But apparently it went to the district court here in Chicago. And if you look through the docket of that case, it's clear that it was intended to be transferred to the bankruptcy court, but that never happened. But all of these transfers were the result of United Airlines or errors made by the court. It's not Mr. Brown that caused the problem. And so that's why we submit, if the bankruptcy court is a court of equity, that Mr. Brown should have an opportunity to have his case heard. And that it's unreasonable, if not outrageous, to say, no, this case should not be decided. Because an adversary case is separate from the bankruptcy case. It's really litigation all in and of itself. Mr. O'Connor, during what periods of time did the plaintiff not have counsel? My understanding is that sometime during the penancy of the case in California, that the firm that was representing him basically went to funk. They broke up, and I don't think they ever withdrew. And my understanding is he wasn't aware that that even occurred. Let me try to ask the question again. When did he have counsel? When did he not have counsel? Well, my understanding is there may still be counsel of record in that adversary spending, because they never withdrew. But technically, he didn't, because my understanding is that firm basically dissolved and nobody substituted or appeared in the case. Well, typically an appearance is by an individual lawyer as well as a firm, right? That's correct. So the fact that the firm broke up really shouldn't make any difference, should it? Arguably, that's true. Okay. So when was he lacking counsel? To my knowledge, that attorney never withdrew. So he's always had counsel? Well, I mean, he didn't have an attorney that he could talk to. If the case was still pending, which it is not, then arguably I believe he still would have had counsel. Thank you. But can the legal system tolerate delays of such length in reopening a case? Case becomes ancient history and then science. Well, I guess I would bring up a couple points in response to that. First off, the bankruptcy case of United was opened and reopened, I think, after we attempted to do it in 2013. If you look at the docket, it's been opened and reopened several times to allow orders to enter or whatever. And 11 U.S.C. 350 allows the court to reopen a case to correct errors or correct. If what? Correct errors or to make corrections. And we're submitting that this is... Indefinitely, forever? Well, arguably so, in my opinion. I mean, I've been in bankruptcy cases that have been around 20 years, pending. No, I can understand how you can have a bankruptcy case that goes on for a long time, reorganizing a company and so on. But after it appears to be completed, to reopen it many years later? Well, I'm just saying if this adversary hadn't fallen in the cracks, so to speak, meaning if it had been docketed properly in the bankruptcy court, the only way you can get rid of it is by motion, by trial, by some adjudication or final judgment. And that never occurred. This case basically vanished off of the radar screen, so to speak, and there was never a final order. Whether that was raised by them, United, or my client, there's no final order. So the case was never fully litigated. Is there any doubt that the California case was filed in violation of the bankruptcy stay? I don't believe that's true. Why not? Because there was a motion, I think, raised by United during the pendency of the case regarding stay, whether or not they could proceed, or I believe, I think, a motion was filed for relief from stay after the fact, and that certain things could be heard. So to me, it's not a direct violation, no. Okay, thank you, Mr. O'Connor. Thank you. Mr. Slade? Good morning. May it please the Court, Mike Slade for United. Last week was the 13-year anniversary of United's bankruptcy filing, and next month will be the 10th anniversary of the confirmation of United's plan. Was there a party here? There was not a party. If there was, I wasn't invited. Next month will be the 10th anniversary of the confirmation of United's plan. The question here is whether the bankruptcy court abused its discretion in decline to reopen United's bankruptcy under Section 350B of the Code, which gives the Court discretion to do so, quote, to administer assets to accord relief for the debtor or for other cause. Here, the bankruptcy court got it right and certainly did not abuse its discretion. I would ask the Court to focus on two things. The first is that there's no real doubt that Mr. Brown's claims against United were discharged. Section 1141D of the Code is very clear that unless provided in the plan, the confirmation order, or the Code, any debt that arose before the date of confirmation is discharged. Mr. O'Connor confirmed that this debt did arise before confirmation. He was fired before United filed bankruptcy. He prosecuted his case during the bankruptcy. He filed a lawsuit in 2004 in clear violation of the automatic stay. His motion to lift the stay was not granted. It's clear that his claims are barred by 1141D and United's plan. In his reply brief, Mr. Brown suggests that the plan and confirmation order impliedly permitted him to pursue his case, but the plain terms of both documents, which are reflected in pages 1940 and 41 and 44 of the record, and quoted from at length in my brief, say exactly the opposite. This court has heard many appeals from United's bankruptcy and has ruled several times, including in the region capital case, that all creditors are bound to United's plan. Mr. Brown is not an exception, and that means he loses. The second thing is that Mr. Brown had the burden to prove below that he had cause for reopening United's bankruptcy. And it's based on the undisputed facts, even that he alleges there was not sufficient cause. It's undisputed that Mr. Brown waited more than four years after United's case was closed to file his motion to reopen. That was seven years after confirmation and a dozen years after his termination. This court's precedents, including the Redmond case, the Bianucci case, and Zurn, make clear that the passage of time weighs heavily against reopening. And there was a ton of time that passed here. It's also undisputed that Mr. Brown could have proceeded far earlier. He had counsel that actually appeared at least twice in the bankruptcy case. And there's no claim here that he lacked notice at any time. He surely could have proceeded in the bankruptcy court before the case closed, and there's no explanation as to why he did not. Also, we know for a fact that Mr. Brown filed two separate lawsuits in 2007 in a federal court in Arizona, pro se. United was never served with those lawsuits. We didn't find out about them until after he filed his motion to reopen six years later. But why did he do that? Why did he file a lawsuit in Arizona rather than go to the bankruptcy court? There's no explanation at all. And the reality is that Mr. Brown has no cause other than many years of his and his own counsel's inaction. Now, this is not Mr. O'Connor's fault. He arrived on the scene long thereafter, but it's his client's fault. Section 350 of the code has never been... But does he have mental illness? I'm sorry? Isn't he mentally ill? Are you talking about Mr. Brown? Yes. I think it depends on who you ask. I'm not sure there's evidence of mental illness. There was a claim that while he worked for United, he had depression. Depression, that type of a condition. But I don't think that... Well, certainly that wouldn't be relevant if he had counsel representing him, but there's no evidence that he didn't at any time. I mean, Section 350 of the bankruptcy code has never been interpreted to allow a creditor to reopen a bankruptcy case to pursue a long discharge claim. If this would have gotten a... This clearly did not fall through the cracks. It is clearly decided by the plain terms of United's plan of reorganization that this is a discharge claim that can't proceed. You know, when United filed for bankruptcy in 2002, then-Chief Judge Weedoff had just started his second term as a bankruptcy judge in the Northern District of Illinois. And just last month he retired after a long and distinguished career on the bankruptcy bench. Judge Weedoff got this one right. And we would ask that the bankruptcy court and the district court be affirmed. I see I'm out of time. Thank you, Mr. Slade. Thank you. Mr. O'Connor, your time ran out. If you have another minute, if you'd like. Well, the only thing that I've seen regarding a discharge or treatment under the plan is general terms, pretty much. Or they talk about collective bargaining. And it's not well defined. To me, if you have an adversary proceeding, you must in your plan say what you're going to do with it, or that's a case in itself and it continues. Even if the main case goes away, the adversary can still exist. So I don't understand that argument. I don't understand the argument either from the standpoint that if that were true, then why didn't they file in the district court or follow up to say, hey, there's no case here anymore. Dismiss it. They didn't do that. So it makes no sense. And Mr. Brown's claims are post-petition as well as pre-petition. It's an ongoing thing that was ongoing during the bankruptcy. OK, well, thank you very much, Mr. O'Connor and Mr. Slade. We'll move to our second.